IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTOPHER BAILEY,            :
                               :
        Plaintiff[s],          :
                               :
v.                             :
                               :
INNOVATIVE CONTRACTING         :        CIVIL ACTION NO.
SOLUTIONS, INC., et al.,       :        1:13-CV-4114-LMM
                               :
        Defendants.            :

## OPINION AND ORDER

This is an action for unpaid overtime under the Fair Labor Standards Act (the "FLSA"). It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 28] and the Defendants' Motion to Strike or Exclude the Declaration of Brian Williams [Doc. 35]. For the reasons stated below, the Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The Defendants' Motion to Strike or Exclude is **DENIED**.

### I. Background

On July 11, 2011, Defendant Innovative Contracting Solutions, Inc. ("ICS") hired the Plaintiff, Christopher Bailey, as a project superintendent at a salary of $49,000 per year.[1] Mr. Bailey remained in that position until July 12, 2012.[2] ICS

---

[1] Defs.' Statement of Facts ¶¶ 2, 4.

[2] Id. ¶ 4.

is a commercial general contractor that renovates offices, medical facilities, industrial buildings, and restaurants throughout the southeast.[3] Defendant Matthew Hubbard is the President and sole shareholder of ICS.[4]

The parties dispute exactly what Mr. Bailey's duties as a project superintendent entailed. They agree that on a typical day, Mr. Bailey was the most senior ICS employee on the job site.[5] The Plaintiff contends, however, that usually he was the *only* ICS employee at a given job site.[6] The Defendants claim that Mr. Bailey was rarely supervised, but Mr. Bailey claims that he reported to or checked in with his supervisor on a regular basis.[7] The parties further dispute whether Mr. Bailey was responsible for hiring subcontractors. The Defendants claim that Mr. Bailey exercised "sole discretion" in selecting project labor, determining the amount of labor needed, assessing the skills of laborers, and recommending pay rates for laborers.[8] Mr. Bailey asserts that laborers were used

---

[3] Pl.'s Statement of Facts ¶¶ 1-2.

[4] Id. ¶ 4.

[5] Pl.'s Resp. to Defs.' Statement of Facts ¶ 10.

[6] Id.

[7] Id. ¶ 11; Defs.' Statement of Facts ¶ 11.

[8] Defs.' Statement of Facts ¶¶ 18-20.

only ten to fifteen percent of the time, but admits that on those occasions, he consulted with his supervisors to determine the amount of labor needed and then made recommendations regarding which people to hire.[9] Mr. Bailey denies that he ever set the pay rate for laborers.[10] He further denies that he had "sole discretion" in selecting laborers – he needed approval from his superiors.[11] Mr. Bailey admits that his recommendations for which laborers to hire were never rejected.[12] Additionally, when laborers were used, Mr. Bailey recorded and submitted their time to ICS management.[13]

In regard to supervision of subcontractors, Mr. Bailey admits that he was responsible for overlooking the work of the subcontractors on site, but asserts that he had little to no control over their actions.[14] Additionally, Mr. Bailey stated that the subcontractors already knew what their jobs were without any

---

[9] Pl.'s Resp. to Defs.' Statement of Facts ¶¶ 18-19.

[10] Id. ¶ 19.

[11] Id. ¶ 20.

[12] Id. ¶¶ 21-22.

[13] Id. ¶ 30.

[14] Id. ¶¶ 23-24.

direction.[15] Mr. Bailey did not keep track of the subcontractors' time, but would report if subcontractors were absent, late, or left early.[16] About ninety percent of the time, subcontractors were scheduled by someone other than Mr. Bailey, but on occasion, he coordinated subcontractors' presence on job sites.[17]

Most significantly, the parties dispute the hierarchy of employees at ICS and the basic duties of project superintendents like Mr. Bailey. Mr. Bailey contends that as a project superintendent, he was supervised by project managers.[18] ICS, on the other hand, states that project superintendents and project managers worked together to ensure the successful completion of projects.[19] Mr. Bailey testified that he spent seventy-five to eighty percent of his day performing manual labor, which was the majority of his responsibility.[20] ICS stated that two-thirds of Mr. Bailey's work was non-manual labor, that any manual labor performed was limited to items after the completion of

---

[15] Id. ¶ 24.

[16] Pl.'s Resp. to Defs.' Statement of Facts ¶ 26.

[17] Id. ¶ 34.

[18] Pl.'s Statement of Facts ¶¶ 6, 13.

[19] Defs.' Resp. to Pl.'s Statement of Facts ¶¶ 6, 13.

[20] Pl.'s Statement of Facts ¶¶ 16-22, 24.

construction, and that temporary laborers performed manual labor.[21] It is not disputed that on occasion, Mr. Bailey would purchase supplies and pick up building permits.[22]

Mr. Bailey claims that ICS failed to pay him time-and-a-half pay for hours over forty per week. The Defendants now move for summary judgment, claiming that Mr. Hubbard does not qualify as an employer, that Mr. Bailey was an exempt employee, or at the very least, that some of Mr. Bailey's claims are barred by the statute of limitations.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[23] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[24] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[25] The

---

[21] Defs.' Resp. to Pl.'s Statement of Facts ¶¶ 16-22, 24.

[22] Pl.'s Resp. to Defs.' Statement of Facts ¶¶ 41, 43.

[23] FED. R. CIV. P. 56(a).

[24] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[25] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[26] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[27]

## III. Discussion

### A. Motion to Strike or Exclude

In opposition to the Defendants' Motion for Summary Judgment, the Plaintiff offers the Declaration of Brian Williams. The Defendants move to strike or exclude that declaration. They claim that Mr. Williams was disclosed too late in the discovery process for his testimony to be considered.[28] Pursuant to the 2010 Amendments to the Federal Rules of Civil Procedure, motions to strike are not a preferred method for challenging the admissibility of evidence on summary judgment.[29] The Court will therefore consider the motion only as a motion to exclude.

---

[26] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[27] Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[28] Br. in Supp. of Defs.' Mot. to Strike or Exclude, at 2-3.

[29] FED. R. CIV. P. 56 advisory committee's note of 2010 subdivision (c)(2).

Here, the Plaintiff became aware of a new witness late in discovery and disclosed that witness to the Defendants.[30] The Defendants claim prejudice because they were unable to depose that witness, Mr. Williams, within the discovery period.[31] The Plaintiff offered to consent to an extension of discovery to allow the Defendants to depose Mr. Williams.[32] The Defendants never responded to that offer.[33] Additionally, Mr. Williams is a former employee of the Defendants.[34] This Court refuses to exclude the declaration where the witness is a former employee of the Defendants and the Defendants could have simply responded to the Plaintiff's offer and then deposed Mr. Williams.

## B. Motion for Summary Judgment

### 1. Hubbard as Employer

An individual may only be held liable for violating the overtime provisions of the FLSA if he qualifies as an "employer."[35] The term "employer" is broadly

---

[30] Pl.'s Br. in Opp'n to Defs.' Mot. to Strike or Exclude, at 4.

[31] Br. in Supp. of Defs.' Mot. to Strike or Exclude, at 3.

[32] Pl.'s Br. in Opp'n to Defs.' Mot. to Strike or Exclude, at 5.

[33] Id.

[34] Id. at 6.

[35] 29 U.S.C. § 207(a)(1); Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008).

defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[36] Corporate officers fall within this definition if they are involved in the day-to-day operations of the business or have some direct responsibility for supervising the employee.[37] Here, while Mr. Hubbard did not set employee compensation generally, he set the upper end of salary ranges, made determinations regarding employee benefits, decided employee exempt or non-exempt status, and had final say over almost every decision.[38] Given that Mr. Hubbard had significant involvement in the day-to-day affairs of ICS, Mr. Hubbard's motion for summary judgment on the ground that he is not an employer should be denied.

### 2. Exemptions

As a general matter, the FLSA provides that employees are entitled to overtime pay for all hours worked in excess of forty hours per week.[39] But, the FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity" from its overtime requirements.[40] There is no dispute

---

[36] 29 U.S.C. § 203(d).

[37] <u>Alvarez Perez</u>, 515 F.3d at 1160.

[38] Ford Dep. at 71, 74; Hubbard Dep. at 30.

[39] 29 U.S.C. § 207(a)(1).

[40] 29 U.S.C. § 213(a)(1).

here that Mr. Bailey was not paid overtime. The Defendants, however, contend that Mr. Bailey qualified as an exempt employee and is therefore not entitled to overtime pay.

"The employer bears the burden of proving that an employee is exempt from overtime payments."[41] The employer "must prove applicability of an exemption by 'clear and affirmative evidence.'"[42] Further, the FLSA "should be interpreted liberally in the employee's favor" and the Act's exemptions "are to be narrowly construed" against the employer.[43]

### a. The Administrative Exemption

ICS contends that the Plaintiff was an exempt employee under the administrative exemption. That exemption removes employees from the overtime requirements of the FLSA if they are compensated on a salary or fee basis at a rate of $455 a week or more, have a primary duty of office or non-manual work directly related to management or operations, and their primary duty includes the "exercise of discretion and independent judgment with respect to matters of

---

[41] Rock v. Ray Anthony Int'l, 380 Fed. App'x 875, 877 (11th Cir. 2010) (citing Atlanta Prof 'l Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 804 (11th Cir. 1991)).

[42] Birdwell v. City of Gadsden, 970 F.2d 802, 805 (11th Cir. 1992).

[43] Id.

significance."[44] The parties agree that Mr. Bailey received a salary of $49,000 per year, which satisfies the first requirement. The second two requirements are disputed.

An employee's primary duty is "the principal, main, major or most important duty that the employee performs."[45] Factors to consider in determining an employee's primary duty are the importance of the exempt work relative to other work, how much time is spent performing exempt work, whether the employee is subject to direct supervision, and the relationship between the employee's salary and the wages paid to nonexempt workers.[46] The amount of time spent performing exempt work is a guide, but is not the sole consideration.[47] Additionally, to qualify as exempt, the employee must perform work "directly related to assisting with the running or servicing of the business."[48] Examples of work that would qualify are:

> tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources;

---

[44] 29 C.F.R. § 541.200.

[45] 29 C.F.R. § 541.700(a).

[46] Id.

[47] 29 C.F.R. § 541.700(b).

[48] 29 C.F.R. § 541.201(a).

employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.[49]

Mr. Bailey contends that his primary duty was performing manual labor. Specifically, he claims that he was often the only person performing labor at a job site. ICS claims that Mr. Bailey's primary duty was supervising job sites and subcontractors. While there is certainly evidence in the record that Mr. Bailey performed some exempt duties, such as reporting laborers' time and making purchases, there is also evidence that he spent a significant amount of time performing manual labor. The Defendants dispute the amount of time Mr. Bailey spent performing manual labor – specifically, they claim only one-third of Mr. Bailey's time was spent on incidental manual tasks, while Mr. Bailey claims he spent over three-quarters of his time on essential manual labor. Taking the facts in the light most favorable to Mr. Bailey, it cannot be said that any administrative tasks were the most important part of his work. Determining Mr. Bailey's actual primary duty will therefore require resolving factual disputes between the parties and assessing the credibility of the witnesses, making resolution of this issue inappropriate for summary judgment.

Even if Mr. Bailey's duties could be classified as administrative as a matter of law, the evidence is not sufficient to say that he exercised discretion and independent judgment with regard to matters of significance. Where discretion is

---

[49] 29 C.F.R. § 541.201(b).

limited and does not have a profound effect on the employer's business, the exemption is not satisfied.[50] Here, the parties dispute the facts regarding Mr. Bailey's exercise of discretion. Under the Defendants' version of the facts, Mr. Bailey hired employees, set their pay, supervised them on site, and kept track of their time on a regular basis. Under Mr. Bailey's version of the facts, he made recommendations about who to hire, but most times he was simply performing labor and had no authority to make decisions or even talk to clients. It is a jury question as to who is the most credible.

### b. Executive Exemption

The Defendants also claim that Mr. Bailey fell under the executive exemption. That exemption excludes from the overtime requirement employees who are paid not less than $455 per week, have a primary duty of management of the enterprise in which they are employed, customarily and regularly direct the work of two or more employees, and have the authority to hire or fire other employees or can give suggestions regarding hiring, firing, or employee change of status that are given particular weight.[51] Again, the parties agree that Mr. Bailey satisfied the salary requirements for the executive exemption. The parties disagree on the other three requirements.

---

[50] <u>Allemani v. Pratt (Corrugated Logistics) LLC</u>, 1:12-cv-00100-RWS, 2014 WL 2574536, at *11 (N.D. Ga. June 6, 2014).

[51] 29 C.F.R. § 541.100(a).

The Eleventh Circuit has found a genuine dispute of material fact regarding the management duties prong of the test where the employee performed some managerial tasks, but spent greater than fifty percent of his time performing tasks identical to those of hourly employees.[52] In <u>Baretto</u>, the employee did not have time to perform his managerial duties because he spent so much time performing non-exempt work.[53] Additionally, the hourly employees there did not need supervision because they already understood their jobs.[54] Conversely, the Eleventh Circuit has held that the assistant manager of a pizza restaurant met the managerial duties requirement despite making pizzas and interacting with customers, where his managerial tasks, such as supervising delivery drivers, apportioning work, and marketing the restaurant, were more important to operation of the enterprise.[55]

Here, Mr. Bailey performed some managerial tasks, such as making purchases and reporting day laborers' time to human resources. But, taking the facts in the light most favorable to Mr. Bailey, he also performed a substantial amount of manual labor that was necessary to the completion of the jobs.

---

[52] <u>Barreto v. Davie Marketplace, LLC</u>, 331 F. App'x 672, 675 (11th Cir. 2009).

[53] <u>Id.</u>

[54] <u>Id.</u>

[55] <u>Diaz v. Team Oney, Inc.</u>, 291 F. App'x 947, 949 (11th Cir. 2008).

Additionally, like in <u>Barreto</u>, the laborers knew what their jobs were and performed them without supervision. A reasonable jury could find that Mr. Bailey's primary duty was not managerial, but rather identical to that of a non-exempt employee.

As to the requirement that the employee regularly and customarily supervise two or more employees, the facts again do not support application of this exemption. The regulations require the employee to supervise two or more full-time employees or their equivalent.[56] There is no evidence here that Mr. Bailey supervised any full-time employees. In fact, Mr. Bailey claims that he was only supervising day laborers about ten to fifteen percent of the time. Those laborers were not even considered employees of ICS. The Defendants cite <u>Armitage v. Dolphin Plumbing & Mechanical, LLC</u>,[57] for the proposition that supervising piece workers and day laborers satisfies the requirement. The Defendants misstate the holding of <u>Armitage</u>. The employee there admitted that he regularly supervised at least two hourly employees *in addition* to piece workers and day laborers.[58] Here, there is no indication that Mr. Bailey supervised ICS employees.

---

[56] 29 C.F.R. § 541.104(a).

[57] 510 F. Supp. 2d 763, 771 (M.D. Fla. 2007).

[58] <u>Id.</u>

The facts do indicate that Mr. Bailey made recommendations on which laborers to hire and that those recommendations were given deference. The fourth requirement is therefore arguably satisfied. Regardless, because the Defendants have not met their burden to prove that Mr. Bailey's primary duty was managerial and that he supervised two or more employees, the executive exemption cannot apply at this point.

### 3. Statute of Limitations

The statute of limitations under the FLSA is two years, unless there is proof of a willful violation of the statute.[59] If a willful violation is shown, the statute of limitations extends to three years.[60] To show a willful violation, a plaintiff must present evidence "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."[61] Merely negligent conduct does not rise to the level required to show willfulness.[62] A willful violation would exist where an employer ignores advice from a responsible official that its conduct is not lawful.[63] The Eleventh Circuit has held that an issue

---

[59] 29 U.S.C. § 255(a).

[60] Id.

[61] McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

[62] Id.

[63] Davila v. Menendez, 717 F.3d 1179, 1185 (11th Cir. 2013).

of fact as to willfulness exists where there was evidence that the employer knew of the hourly wage laws, but failed to investigate whether they had complied with them.[64]

Here, the Plaintiff has not produced evidence to show a willful violation of the FLSA. To the contrary, the evidence shows that the Defendants consulted an attorney and complied with industry standards regarding classification of superintendents.[65] Although the Plaintiff contends that the Defendants relied on potentially outdated legal advice, that fact would not indicate a willful violation of the FLSA. The Court therefore finds that the two-year statute of limitations applies. This lawsuit was filed on December 12, 2013. Any claims for overtime worked prior to December 12, 2011, should therefore be dismissed.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Strike or Exclude the Declaration of Brian Williams [Doc. 35] is **DENIED**, and the Defendants' Motion for Summary Judgment [Doc. 28] is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED** this 4th day of December, 2014.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

---

[64] Id.

[65] Hubbard Dep. at 30, 32; Ford Dep. at 77, 80-81.